LOUISE C. H. PILCHER, *Administratrix, et al.*, v.
W. H. BROWN & CO. AND WM. M. LEWIS.

#### No. 242.

PLEADING AND PRACTICE— *answer and evidence failing to make
a defense, judgment reversed.* Where an answer and the evi-
dence in support thereof failed to make out any defense, the
judgment of the trial court, which was manifestly controlled
thereby, will be reversed, notwithstanding no objection to such
answer and evidence was made by plaintiffs in the trial of the
action.

Error from Lyon District Court.    Hon. Charles B.
Graves, Judge.    Opinion filed December 20, 1897.
*Reversed.*

*I. O. Pickering*, for plaintiffs in error.

*Buck & Spencer*, for defendants in error.

MILTON, J.    In this action the plaintiffs sought to
recover from the defendants Brown & Co., a firm
composed of W. H. Brown and N. E. Griffith, the
sum of eighteen hundred dollars and interest, on ac-
count of a certain real-estate transaction.    Plaintiffs
purchased, under a written contract, a tract of land in
Lyon County, from the agent of defendant Lewis, on
June 6, 1887.    On June 8, 1887, Lewis, not being ad-
vised of such sale, personally sold the same tract to
Brown & Co., and executed and delivered to them his
bond for a deed — containing the usual covenant for a
conveyance of the land by warranty deed, and subject
to a mortgage or mortgages amounting to fifteen hun-
dred dollars — upon payment of the full consideration
in said instrument expressed, to wit, eighteen hundred
dollars, evidenced by two notes, one for eight hundred
dollars, due September 8, 1887, and one for one thou-
sand dollars, due June 8, 1888.    The bond for deed

796      PILCHER v. BROWN.

S. Dept.            Opinion.   Milton, J.            6 Kan. App.

was recorded on June 15, 1887. On June 20, 1887, plaintiffs completed their purchase under the contract, paying a total consideration of eighteen hundred dollars, and assuming a mortgage which was stated, in the warranty deed on that day executed and delivered to them by Lewis, to be seventeen hundred dollars. The deed contained this clause :

"The above-described land is free and clear of all incumbrances whatever, except a mortgage of seventeen hundred dollars on the same land, together with a bond for deed held by Griffith & Brown on the same land."

The deed was recorded on June 25, 1887. Believing themselves to be in possession of the land, on August 1, 1887, plaintiffs instituted an action against Brown & Co. to quiet title, expecting to set aside the bond for a deed held by the latter. After making the deed to plaintiffs, Lewis had tendered to Brown & Co. two hundred dollars and the notes received from them. In their answer and cross-petition, Brown & Co. set up their equitable title under the bond for a deed and asked to have their title quieted as against plaintiffs' claim. The District Court found substantially the foregoing facts, and decreed that Brown & Co.'s title should be quieted. Plaintiffs carried the case by proceedings in error to the Supreme Court, which, at the January term, 1891, affirmed the judgment of the trial court. See *Pilcher v. Brown* (45 Kan. 192), where a more complete statement of the facts appears. On March 2, 1891, plaintiffs commenced this action, seeking to obtain an order compelling Lewis to deposit two hundred dollars and the two notes hereinbefore mentioned with the clerk of the court, and a further decree adjudging plaintiffs to be entitled to said notes and to a recovery of the amount due thereon from Brown & Co.

PILCHER v. BROWN. 797

Dec. 20, 1897.        Opinion.    Milton, J.        C. Div.

The answer of the latter contained the following averment:

"That these answering defendants have fully performed all the conditions of said bond on their part to be performed, and, on September 10, 1888, duly paid off said notes so given by them to said Wm. M. Lewis and took up the same, and since then have ever been and now are entitled to a complete and perfect deed to said premises."

The only evidence to sustain this averment was as follows. Wm. M. Lewis, on behalf of defendants, testified in substance:

I know the land. I made a bond for a deed, June 8, 1887, to Brown & Co. At that time I had not heard that Glendenning & Sawyer had sold the land. The deed was made on June 20, 1887. The deed recited former incumbrances and conveyances. When I made the deed I took an indemnity bond from plaintiffs. P. G. Sawyer did the business with me. I was urged to make the deed, but told them I had given bond for deed upon which I was liable, and they gave me a bond to indemnify me against this bond, whereupon I agreed to give them the deed. After the former suit I sent the bond to plaintiffs to be used as evidence in that case. I have never seen it since and do not know where it is. The condition of it was to save and protect me against all loss and liability on account of either deed or bond. In September, 1888, I settled with Brown & Co., gave them back the notes and paid them the costs expended, and after settlement got from them only about ten dollars in lieu of the notes surrendered.

T. D. Griffith, on behalf of defendants, testified in substance:

I am the husband of N. E. Griffith, one of the firm of Brown & Co. I represent her in all matters. Brown & Co. got nothing of the rents for 1887. I had the bond for a deed. It was used as evidence on the trial.

798 PILCHER v. BROWN.

S. Dept.            Opinion.  Milton, J.            6 Kan. App.

I have never seen it since. I read it carefully. Its provisions indemnified us against all loss and expenses that might follow on account of a deed. We settled with Lewis and took up our notes, and after deducting our losses on account of incumbrances on the land when we bought, and costs and expenses of suit, we paid him the balance, ten dollars. We had all the items of expense there, and we agreed upon them and settled.

The trial court made the following findings of fact and conclusions of law:

### FINDINGS OF FACT.

"1. On August 1, 1887, the plaintiffs brought suit in this court to obtain possession of the land in controversy. In that suit the defendants W. H. Brown & Co. were adjudged to be the owners of the land and their title thereto was quieted. That judgment was, afterwards and before the commencement of this suit, affirmed in the Supreme Court.

"2. In September, 1888, the defendants, Lewis and Brown & Co., had a settlement, which resulted in the surrender by Lewis of the notes of Brown & Co. held by him, and the payment by Brown & Co. to Lewis of the sum of ten dollars, which was a complete settlement as between them of the contract of purchase stated in paragraph six of the agreed statement of facts herein.

"3. After the purchase of the land of Lewis by Brown & Co., and before said settlement, Brown & Co. paid out, in extinguishment of incumbrances on said land and in expenses incurred in defending the suit hereinbefore mentioned, an amount which, if allowed as a set-off against said notes, would extinguish them except the sum of ten dollars. The amounts so paid out by Brown & Co. were consented to by Lewis and allowed by him as a set-off against the notes aforesaid. The amounts so paid by Brown & Co. were additional to the incumbrances and charges assumed by them in the bond for deed which they received from Lewis and which is mentioned in paragraph six of the agreed statement of facts herein.

"4. Long prior to the payment by Brown & Co. of any of the incumbrances or expenses aforesaid, and long before the settlement with Lewis, Brown & Co. had actual and constructive notice of the purchase made by said plaintiffs of said land on June 6, 1887, and of the conveyance thereof by Lewis to plaintiffs.

"5. The two notes for eighteen hundred dollars which Lewis surrendered to Brown & Co. at the settlement aforesaid were the same notes that were given by Brown & Co. to Lewis as a part of the purchase price of said land. Lewis never parted with said notes, but was the owner and holder thereof continuously from the time he received them from Brown & Co. until he surrendered them at the settlement aforesaid.

"6. Brown & Co. have not paid or offered to pay to the plaintiffs any part of the purchase price of said land represented by said two notes. The plaintiffs had no knowledge of said settlement by Lewis and Brown & Co., nor of the surrender of said notes, and never consented thereto. The plaintiffs offered to convey said land to Brown & Co., upon payment by them of the purchase money represented by said two notes.

"7. The plaintiffs never received any of the crops grown on said land in the year 1887, which belonged to defendants Brown & Co., and if they had, the Statute of Limitations would prevent a recovery therefor."

CONCLUSIONS OF LAW.

"1. The plaintiffs by their purchase and conveyance from Lewis became subrogated to the rights of Lewis as against Brown & Co., and had the right to receive from Brown & Co. whatever would thereafter become due on the notes held by Lewis, as between Lewis and Brown & Co.

"2. Brown & Co. had the right to extinguish by payment any incumbrances on the land, described in their bond for a deed which they did not in terms assume, and recover from Lewis the amount so paid.

"3. The plaintiffs, having indemnified Lewis against

800     Pilcher v. Brown.

S. Dept.     Opinion.   Milton, J.     6 Kan. App.

loss which he might sustain on account of the bond for a deed to Brown & Co., cannot complain of Brown & Co. for retaining out of the amount due on the Lewis notes the expenses incurred by them in defending the suit which plaintiffs brought for the pupose of depriving them of the right which they obtained under said bond for a deed.

"4. The plaintiffs ought to recover the sum of ten dollars and costs of suit against both Lewis and Brown & Co."

An issue raised in the answer of Brown & Co. as to the rental of the land for the year 1887 is eliminated from the present inquiry by finding number seven. Plaintiffs make the following specifications of error:

"*First*, the court erred in its second finding of fact, the evidence to support the same being insufficient and wholly immaterial; *second*, the court erred in its third finding of fact, the evidence being immaterial and insufficient to support the same; the latter clause of said third finding of fact is unsupported by any evidence whatever; *third*, the court erred in its third conclusion of law, the same being unsupported by any material evidence or any finding of fact, and being contrary to law; *fourth*, the court erred in its fourth conclusion of law and in its judgment, the amount being under the law and the evidence in this case too small; *fifth*, the court erred in overruling plaintiffs' motion for judgment on the findings of fact for the full amount of said notes, to wit, eighteen hundred dollars and interest; *sixth*, the court erred in overruling plaintiffs' motion for a new trial."

Plaintiffs' motion for judgment on the findings of fact and their motion for a new trial were overruled. The motion for a new trial contained a large number of grounds and sufficiently raised the questions here considered.

The last paragraph of finding number three is not supported by the evidence, as the record fails to show

PILCHER v. BROWN. 801

Dec. 20, 1897.        Opinion.  Milton, J.        C. Div.

that any incumbrance *in addition* to that mentioned in
the bond for a deed was paid by Brown & Co. The
first conclusion of law is correct. After Lewis had
had made a warranty deed conveying the premises to
plaintiffs, he had no further authority to deal concern-
ing the same. The notes ought not have been turned
over by him to Brown & Co. He was not a party to
the first action, but the parties thereto were bound by
the pendency thereof. Counsel for defendants say in
their brief:

"The first suit was brought in August, 1887. Plain-
tiffs therein claimed the land, and, being beaten, went
to the Supreme Court on that claim. There was a con-
tinuous *lis pendens*, and that case was decided on Janu-
ary 10, 1891. This suit was brought on March 2, 1891,
and was the first suggestion that plaintiffs had any
claim against Brown & Co. Brown & Co. had made
a perfect settlement in September, 1888, with Lewis.''

It is hardly consistent to speak in the same connec-
tion of the *lis pendens* and of the right of Brown & Co.
to settle with Lewis. We think the evidence as to the
alleged settlement was wholly incompetent. Plaintiffs
were no more bound by the agreement Lewis made
with Brown & Co. in September, 1888, — of which
they were in fact ignorant — than they would have
been by an agreement between any other person and
Brown & Co. Notwithstanding the evidence shows
that the notes were surrendered in September, 1888,
by Lewis to Brown & Co., the obligation of the latter
to plaintiffs under the terms of the bond for a deed
was undischarged.

The averment of the answer hereinbefore set out as
to payment of the notes is equivocal; it can be read
to mean that the two notes Brown & Co. gave in pur-
chasing the land were paid to Lewis, or that they
were paid to plaintiffs. If given the first meaning,

51—6 KAN. APP.

802      Pilcher v. Brown.

S. Dept.      Opinion.   Milton, J.      6 Kan. App.

the answer states no defense; if the second, it finds no support in the evidence.

This answer was not attacked in the trial court and it will therefore be considered as stating a defense. But which of these two defenses is averred? Evidently, that Brown & Co. had paid to Lewis the amount due on the notes. The conclusions of law, with the exception of the first one, with which the others are irreconcilable, show that the trial court regarded the answer as setting up this defense. The testimony offered by the defendants relates only to this proposition.

The answer appears to be what Judge Elliott, in his Appellate Procedure, calls a "bad answer." We quote from section 484:

"There is a class of cases which seems to trench upon the general rule that questions upon the pleadings, or questions concerning the failure to plead, must be first presented to the trial court and its decision invoked. . . . The cases to which reference is made as creating apparent exceptions to the general doctrine are those in which it is held that evidence proving a bad answer will not support a judgment in favor of the defendant. Properly limited and applied the doctrince of these cases is not at variance with principle, but it is one to be carefully confined within reasonable limits. The doctrine may be upheld where the evidence wholly fails to make out a defense; that is, where, conceding all that it fairly tends to prove, the defense fails as to some material point. *McCloskey v. Indianapolis, etc., Union,* 67 Ind. 86; *Dorman v. The State,* 56 id. 454; *Freitag v. Burke,* 45 id. 38; *Western Union Tel. Co. v. Fenton,* 52 id. 1."

And from section 485:

"It is, in truth, not because the answer is insufficient that a judgment is vulnerable in a case of the class under consideration, but the judgment is subject to attack . . . as there is no evidence upon which

the law will permit a recovery by defendant.  He fails because he has no evidence to establish a fact, or facts, essential to a recovery, not because he has an insufficient answer."

Also from section 486 :

"The appeal by the plaintiff brings up the case on the evidence and he may, with entire propriety, insist upon a reversal if no defense is established, although he may not have assailed the answer in the court below, provided, of course, that he there made the proper motion and reserved the proper exceptions. He cannot, to be sure, assail the answer for the first time on appeal, but he may attack the proof, for it is one thing to attack the proof and another to attack a pleading."

Applying such tests to the answer of Brown & Co. as supported by their evidence, and giving that evidence its full force, they have not made out a legal defense.  The judgment of the trial court, being unquestionably based on this unsubstantial foundation, cannot stand.

If Brown & Co. were obliged to discharge, and did discharge, incumbrances against the land other than those mentioned in the bond for a deed, and if they are entitled to credits as against the remaining part of the consideration promised by them to be paid for the land, all these matters can be proven and adjusted in another trial.

The judgment of the trial court is reversed and the case is remanded with instructions to grant a new trial.