Durbin v. Northwestern Scraper Co.—36 Ind. App. 123.

DURBIN ET AL. v. NORTHWESTERN SCRAPER
COMPANY ET AL.

[No. 5,049.   Filed February 16, 1905.   Appeal to Supreme Court
dismissed June 29, 1905.]

1. APPEAL AND ERROR.—*Transcript.*—*Change of Venue.*—*Statutes.*—The transcript on appeal, of an action brought in the Superior Court of Madison County and from thence sent on change of venue to the Madison Circuit Court and likewise sent to the Delaware Circuit Court, should contain the transcripts of said courts on such changes, the clerk of the Delaware Circuit Court being governed by §§661, 662 Burns 1901, §§649, 650 R. S. 1881, and not by §1426z Burns 1901, Acts 1895, p. 52, §26, which governs only in appeals from one of such courts in Madison county, where no transcript was made at the time. p. 125.

2. BILLS AND NOTES.—*Principal and Surety.*—*Release.*—*Extension.*—The extension, by the holder, of the time of payment of a promissory note, for a valuable consideration, for a definite time and without the surety's consent, the holder of such note knowing such surety to be such, releases such surety.   p. 128.

3. PLEADING.—*Allegations.*—*Specific.*—*General.*—The sufficiency of a pleading will be tested by the specific facts alleged rather than by general averments.   p. 129.

4. BILLS AND NOTES.—*Principal and Surety.*—*Extension.*—*Consideration.*—*Release.*—Where the corporation principal, without the knowledge of a surety, agrees with the payees of its note to execute "its promissory note," secured by two of its former sureties, in payment of such former note, but there was no agreement as to the negotiability of such new note, or that it should provide interest or attorneys' fees, and no agreement as to time or place of payment, and there was no showing that such corporation was not solvent nor that such debt was better secured by the taking of the new note, no valuable consideration for such extension by the taking of such new note is shown. p. 129.

5. SAME.—*Principal and Surety.*—*Extension.*—*Appointment of Receiver.*—*Definite Time.*—An agreement between the payees of a note and the corporation principal to extend the time of payment until the appointment of a receiver for such corporation is not for a definite time.   p. 130.

6. RECEIVERS.—*Appointment.*—*Discretion of Court.*—The appointment of a receiver lies in the sound discretion of the court in view of all the circumstances and is not the subject of contract between the debtor and creditors.   p. 131.

Durbin *v.* Northwestern Scraper Co.—36 Ind. App. 123.

7. BILLS AND NOTES.—*Principal and Surety.*—*Extension.*—*Consideration.*—The agreement of the corporation principal and two of the sureties on a note, with the payees thereof, to consent to the appointment of a receiver for such principal does not constitute a valuable consideration for the extension of the time of payment of such note.   p. 132.

8. PLEADING.—*Demurrer to Answer.*—*Form.*—A demurrer to a paragraph of answer for the reason that such paragraph does not state facts sufficient to constitute a "ground of defense" is sufficient.   p. 133.

9. PRINCIPAL AND SURETY.—*Alteration of Contract.*—*Notice of Default.*—A surety is released by an unauthorized material alteration in his contract, but he is bound to take notice of the default of his principal, and is bound to know that there might be delays in the enforcement of such obligation by law.   p. 133.

10. RECEIVERS.—*Title.*—*Duties in Payment of Debts.*—The appointment of a receiver does not divest the insolvent's title, and the claims against the property both legal and equitable remain as prior to such appointment, the court, and not the receiver, directing the payment of same as justice requires.   p. 134.

11. PRINCIPAL AND SURETY.—*Alteration of Contract.*—*Release.*—An agreement between the corporation maker and the payees of a note not to enforce payment until after the appointment of a receiver for such corporation does not release a surety on such note where there is no showing when a receiver was appointed.   p. 135.

12. PLEADING. — *Contracts.*—*Forbearance.*—*Breach.*—*Remedy.*—An agreement, upon a valuable consideration, to forbear suit upon a note, can not be pleaded in bar of an action brought within such time, the remedy being an action for damages for such breach.   p. 136.

13. TRIAL.—*Bills and Notes.*—*Forbearance.*—*Breach.*—Though the payees of a note, for a valuable consideration, agree to forbear action upon a note, still, if they bring an action in violation thereof, they have the right to proceed to judgment regardless of the agreement to forbear.   p. 137.

14. PLEADING.—*Bills and Notes.*—*Forbearance.*—*Breach.*—An answer, in an action on a note, showing that the payee had, for a valuable consideration, contracted to forbear suit upon such note, but no definite time is stated for such forbearance, is bad.   p. 138.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by Winfield T. Durbin and others against the Northwestern Scraper Company and others.   From the

judgment rendered, plaintiffs appeal. (For dismissal of appeal to Supreme Court, see 165 Ind. 237.) *Reversed in part and affirmed in part.*

*Lovett & Slaymaker* and *Warner & Brady,* for appellants.

*Bagot & Bagot,* for appellees.

ROBINSON, P. J.—Appellants sued upon a promissory note. A trial upon issues formed resulted in a judgment in appellants' favor against the Northwestern Scraper Company and Robert E. Burke for $18,100, the amount of principal and interest, and without attorney's fees, and a judgment in favor of appellees Bosworth and Neely.

Errors are assigned questioning the sufficiency, as against a demurrer, of the second and amended third paragraphs of appellee Neely's answer, the second and third paragraphs of answer of appellee scraper company, and denying the motion for a new trial.

Much of the argument of counsel for appellee Neely is met by the return to the *certiorari.*

It is first claimed that the proceedings had in the circuit court from which this cause was venued are not properly authenticated. The action was brought in the Superior Court of Madison County, was transferred to the Madison Circuit Court, and from there was taken on change of venue to the Delaware Circuit Court, where the case was tried.

The transcript here shows that when the case was transferred from the Superior Court of Madison County to the Madison Circuit Court the clerk of the superior court made a transcript, duly authenticated, of the proceedings had in that court, and transmitted this transcript with all the original papers to the circuit court. When the venue was changed to the Delaware Circuit Court the clerk of the Madison Circuit Court made a transcript, duly authenticated, of the proceedings in that court, and, with the orig-

inal papers and the transcript from the superior court, transmitted the same to the Delaware Circuit Court. It was the duty of the clerk of the Delaware Circuit Court, upon appeal, and under the precipe filed, to copy into his transcript all papers in the cause on file in his office. The transcript of the clerk of the Madison Circuit Court, with his certificate and the seal of the court, was a paper in the cause, and could become a part of the record only by copying the same, which was done. Section 1426z Burns 1901, Acts 1895, p. 52, §26, concerns the preparation of transcripts on change of venue from Madison county in a cause transferred from one court in that county to the other court of that county without a transcript having been made at the time of such transfer, and the preparation of transcripts on appeal from one of the courts of that county in a case that had been transferred from the other court of that county without a transcript having been made at the time of such transfer. This last provision controlled in the appeals in the cases cited by appellees' counsel. But this statute does not purport to control the manner of authenticating a transcript on appeal from a county to which a case has been sent on change of venue from a county having the two courts. When the two transcripts were filed with the clerk of the Delaware Circuit Court, that court had jurisdiction of the case; and upon appeal from that court the clerk in the preparation of the transcript was governed by the provisions of §§661, 662 Burns 1901, §§649, 650 R. S. 1881. That is, he put into the transcript the two transcripts filed in his office on change of venue, in the same manner that he would have put into the transcript a transcript filed in his office on change of venue from some county having but one court.

On January 12, 1900, appellees the Northwestern Scraper Company, Isaac D. Bosworth, Robert E. Burke and Hester Neely, executed to appellants their promissory note.

whereby they promised to pay, 180 days after date, $15,000, without relief, with six per cent interest per annum, interest paid to maturity, with ten per cent attorneys' fees; the drawers and indorsers waiving presentment for payment, protest, notice of protest and nonpayment, interest payable at the end of each ninety days, negotiable and payable at the Citizens Bank of Anderson, Indiana, with eight per cent interest after maturity.

In a suit on this note commenced December 15, 1900, appellee Hester Neely answered that she executed the note as surety for the scraper company, which company was principal, and received the only consideration therefor, which facts were known to appellants when the note was executed and ever after; that in December, 1900, long after the maturity of the note, appellants, the payees, and then the owners and holders of the note, entered into a contract with the Northwestern Scraper Company, Bosworth and Burke, for an extension of the time of payment of the note for a definite time, and the forbearance of suit, and for a valuable · consideration, all without her knowledge, acquiescence or consent, and that in December, 1900, at the time of this contract, the scraper company was indebted to appellants $7,000 on account of money loaned and advanced to it; that this sum and the note · in suit were then due; that appellants and the Northwestern Scraper Company, Bosworth and Burke then agreed that the scraper company should execute to appellants its note, with Bosworth and Burke sureties thereon, and that appellants should institute suit upon one of the notes, and in that suit ask for the appointment of a receiver to take charge of the scraper company's property, and the company, Bosworth and Burke would not resist, but would consent to the appointment of a receiver, and that Francis A. Walker should be appointed as such receiver upon a proper showing for a receiver, and by the consent of all the parties to the agreement

and without resistance by any of them, and that, in consideration of this agreement, appellants then agreed to extend the time of payment on the note in suit until after the appointment of such receiver, and to forbear suit on the note until such time, and further agreed that the note should not be paid until after such receiver was appointed, and that it should then be filed with the receiver as a claim against the receivership, and paid by him in the administration of the trust; that, in consideration of this agreement, and in performance thereof, the Northwestern Scraper Company, Bosworth and Burke did thereafter execute the notes to appellants, who accepted them and did thereafter bring suit on one of them, and did ask for the appointment of a receiver, and consented to the appointment of Walker as receiver, who did take charge as such receiver, all as stipulated and agreed, and without her acquiescence and consent.

That an extension of the time of payment of a promissory note may release a surety, it must appear that the extension was upon a valuable consideration (*Harter* v. *Moore*

2.    [1840], 5 Blackf. 367; *Halstead* v. *Brown* [1861], 17 Ind. 202; *Menifee* v. *Clark* [1871], 35 Ind. 304; *Abel* v. *Alexander* [1874], 45 Ind. 523, 15 Am. Rep. 270; *Hogshead* v. *Williams* [1876], 55 Ind. 145; *Starret* v. *Burkhalter* [1880], 70 Ind. 285; *Dare* v. *Hall* [1880], 70 Ind. 545; *Henry* v. *Gilliland* [1885], 103 Ind. 177; *Hume* v. *Mazelin* [1882], 84 Ind. 574), was for a definite time (*Menifee* v. *Clark, supra; Jarvis* v. *Hyatt* [1873], 43 Ind. 163; *Abel* v. *Alexander, supra; Tracy* v. *Quillen* [1879], 65 Ind. 249; *Cates* v. *Thayer* [1884], 93 Ind. 156; *Beach* v. *Zimmerman* [1886], 106 Ind. 495; *Voris* v. *Shotts* [1898], 20 Ind. App. 220; *Henry* v. *Gilliland, supra*), without the surety's consent (*Jarvis* v. *Hyatt, supra; Olson* v. *Chism* [1898], 21 Ind. App. 40), and that the holder of the note knew that the person asking to be released was

a surety (*Davenport* v. *King* [1878], 63 Ind. 64; *Mc-Closkey* v. *Indianapolis, etc., Union* [1879], 67 Ind. 86, 33 Am. Rep. 76; *Arms* v. *Beitman* [1880], 73 Ind. 85; *Gipson* v. *Ogden* [1885], 100 Ind. 20, 25; *Post* v. *Losey* [1887], 111 Ind. 74, 60 Am. Rep. 677; *Voris* v. *Shotts, supra; Mullendore* v. *Wertz* [1881], 75 Ind. 431, 39 Am. Rep. 155; *Lamson* v. *First Nat. Bank* [1882], 82 Ind. 21; *Tharp* v. *Parker* [1882], 86 Ind. 102). See, also, *Buck* v. *Smiley* (1878), 64 Ind. 431; *Lemmon* v. *Whitman* (1881), 75 Ind. 318, 39 Am. Rep. 150; *Merriman* v. *Barker* (1889), 121 Ind. 74; *Brooks* v. *Allen* (1878), 62 Ind. 401; *Williams* v. *Scott* (1882), 83 Ind. 405; *Barker* v. *M'Clure* (1826), 2 Blackf. 14.

It is claimed in argument that the surety has not shown by the answer that the agreement to extend the time of payment was upon a valuable consideration, nor

3. that the extension was for a definite time. The sufficiency of the pleading in these respects must be determined from the specific facts alleged as against general averments.

When the agreement was made, the scraper company owed appellants the note in suit and $7,000 "on account for money loaned and advanced" for the company.

4. This sum and the note were then due. It was agreed that the company should execute to appellants "its promissory note," with Burke and Bosworth as sureties, and in performance of this agreement the company, Burke and Bosworth did "execute said notes" to appellants. Conceding that the pleading shows that the note or notes were given for this $7,000 indebtedness, it does not show that this note or these notes were negotiable promissory notes, and provided for attorney's fees, as assumed in argument. It is not made to appear what any of the provisions of this note or these notes were, when payable, or what interest, or if interest, whether from date. If we presume that they

bore interest from date, we can not presume that the new notes would draw more than six per cent interest, and we can not presume that the account that was then due was not drawing interest. §7045 Burns 1901, §5200 R. S. 1881. That is, so far as interest and attorney's fees are concerned, no valuable consideration was shown for the agreement. Neither is it shown that the company was not perfectly solvent, nor that the debt was any the better secured by taking a note or notes. There was no controversy between the parties as to the validity or the amount of the account, or that it was then due and owing. It is not claimed in argument that, under the facts pleaded, obtaining security on the note or notes was of itself a valuable consideration, and it does not appear there was any valuable consideration in the way of interest or attorney's fees.

The agreement was to extend the time of payment on the note in suit until after the appointment of a receiver, and to forbear suit on the note until that time; that appellants should sue on one of these notes, and in that suit ask for a receiver to take charge of the property and affairs of the scraper company; that the company, Bosworth and Burke would consent to the appointment; that a person named should be appointed upon a proper showing. We fail to see how it can be said that the pleading shows that the time of payment of the note in suit was extended for a definite time. Counsel for appellees state in argument that they wish to emphasize the fact that this was not an agreement that a receiver should be appointed; that such an agreement could not be effective for any purpose. It must then have been an agreement that appellants would sue on one of the notes, make a proper showing, and ask for a receiver. But the agreement was to extend the time of payment until after the appointment of a receiver. They were to forbear suit on the note until after the appointment. But when was the appoint-

ment to be made? Counsel say in argument that under the agreement the court was to have no alternative, that a statement was to be made entitling appellants to a receiver. But the parties could make no such agreement. Whether the statement to be made would entitle the parties to a receiver depended upon the judgment of the judge requested to make the appointment, to be determined by him from the pleadings and proof submitted to him. *Galloway* v. *Campbell* (1895), 142 Ind. 324; *Bitting* v. *Ten Eycke* (1882), 85 Ind. 357; *Goshen Woolen Mills Co.* v. *City Nat. Bank* (1898), 150 Ind. 279. A receiver will not be appointed in an improper case though both parties consent. *Whepley* v. *Erie R. Co.* (1868), 6 Blatch. 271; *Baker* v. *Varney* (1900), 129 Cal. 564, 62 Pac. 100, 79 Am. St. 140; *Cameron* v. *Groveland Improve. Co.* (1898), 20 Wash. 169, 54 Pac. 1128, 72 Am. St. 76, note; *Thomson* v. *Shirley* (1895), 69 Fed. 484; *Scott* v. *Hotchkiss* (1896), 115 Cal. 89, 47 Pac. 45; *Couper* v. *Shirley* (1896), 75 Fed. 168. But if the agreement was to bring the suit and make a proper showing, there was nothing to prevent appellants from doing this immediately after the agreement was made; and, even if it could be conceded that the appointment of a receiver must necessarily follow upon the showing agreed to be made, it would avail appellees nothing, for there was nothing to prevent appellants' bringing the suit, and having the receiver appointed and proceedings instituted to collect the note in suit immediately after and on the day the agreement was made. In either event appellants' right to collect the note in suit would not have been postponed for any time within the meaning of the law. Moreover, if it be conceded that the pleading shows that there was necessarily an extension of time for some period, for what period was it? The time of the appointment is not fixed, nor is the time after the appointment.

It is also averred in this paragraph that the promise of appellants to extend the time of payment was upon the consideration, also, that the company, Burke and Bosworth would consent to the appointment of a receiver. But such consent was not a sufficient consideration to support a promise, for the reason that, if sufficient cause was shown to the court for a receiver, the court would make the appointment with or without such consent, and, if sufficient cause was not shown, the court would not make the appointment.

In her amended third paragraph of answer, appellee Neely alleges that she executed the note as surety for the Northwestern Scraper Company; that on December 13, 1900, the company was the owner of unencumbered real and personal property of the value of $20,000, subject to execution, and had been since the execution of the note in suit engaged in the manufacturing business in its own right, and in full possession, use and control of such property; that on the above date appellants, without the knowledge or consent of appellee Neely, agreed with the company that appellants should make proper legal showing before the Superior Court of Madison County for the appointment of a receiver for the company, and the company would not resist the application, and would consent that a receiver be appointed, and, instead of the note in suit being paid by the company according to its terms, that the same should be paid by the receiver in the administration of his trust; that, in performance of that agreement, "said application was thereafter filed, and a receiver was appointed by the agreement and acquiescence" of appellants and the company, and took charge of the property and affairs of the company without appellee's acquiescence or consent; that the receiver still retains possession; that appellants had at all times knowledge of such suretyship.

Appellant's demurrer to the amended third paragraph of appellee Neely's answer states that the answer does not state facts sufficient to constitute a "ground of defense," which, appellee Neely argues, is not sufficient to test the answer. The language of the statute (§349 Burns 1901, §346 R. S. 1881) is "cause of defense." As the demurrer uses language equivalent to that of the statute, it is sufficient. The "ground of defense" manifestly means the basis on which the answer rests, and "cause of defense" would mean nothing more than that. The "ground or cause of demurrer" is an authorized expression. *Lewellen* v. *Crane* (1888), 113 Ind. 289. A separate demurrer to certain paragraphs of answer, that "neither of said paragraphs states facts sufficient," calls in question the sufficiency of the answers. *Ross* v. *Menefee* (1890), 125 Ind. 432. A demurrer that an answer "does not state facts sufficient to constitute a defense to the plaintiff's action herein" is good. *Lewellen* v. *Crane, supra.* We see no reason for saying that "ground for defense" and "cause of defense" are not synonymous terms. See 14 Am. and Eng. Ency. Law (2d ed.), 1120; *Johnston* v. *Sikes* (1888), 56 Conn. 589, 594; *Donahue's Appeal* (1892), 62 Conn. 370, 26 Atl. 399; *Howland* v. *Couch* (1875), 43 Conn. 47. The demurrer was sufficient to question the answer.

The theory of this answer is that the agreement to petition for the appointment of a receiver and his subsequent appointment had the effect of making a material alteration in the contract of suretyship. It is quite true that a surety is not bound beyond the strict terms of his engagement, that the suretyship contract can not be extended beyond the fair scope of its terms, and that the surety will be released if a material change is made in the contract without his consent. *Weir Plow Co.* v. *Walmsley* (1886), 110 Ind. 242. But in the case at bar the surety is an original promisor, becomes bound at the same time

with the principal, and by the same instrument, and is held to know every default of the principal. *Markland, etc., Mfg. Co.* v. *Kimmel* (1882), 87 Ind. 560. When the surety executed the contract she did it with knowledge that, in the collection of the debt, appellants could pursue the remedies provided by law; that the note might be collected by legal process; and that in such proceedings there might be delays.

As this answer shows that a receiver was appointed and took charge of the company's property, it is not material that there was a prior agreement between the principal and appellants that the latter should make application for a receiver, and that the company would not resist the application. So far as shown by the pleading, the fact that a receiver was appointed is conclusive as to the necessity for the appointment. The appointment of the receiver did not dissolve the corporation; it did not necessarily discontinue the business of the company. The object of appointing a receiver is to preserve the property for the benefit of all interested parties, and this is sometimes best attained by continuing the business. The title to the property of the company was not changed. *Bell* v. *American Protective League* (1895), 163 Mass. 558, 40 N. E. 857, 28 L. R. A. 452, 47 Am. St. 481; *Chase's Case* (1828), 1 Bland (Md.) 206, 17 Am. Dec. 277. After the appointment the property of the company was in the custody of the court, and was held by the receiver merely as a ministerial officer of the court. The receiver was the agent of no one except of the court appointing him. Through the receiver the court administers the trust for the benefit of the creditors. The court receives the "property impressed with all existing rights and equities of creditors, and the relative rank of claims, and the standing of liens remains unaffected by a receivership. Every legal and equitable lien upon the property of the corporation is preserved, with the power of enforcing it." *American Trust,*

*etc., Bank* v. *McGettigan* (1899), 152 Ind. 582, 71 Am. St. 345. When and in what manner the note in suit should be paid would be determined by the court, and not by the receiver in accordance with some prior agreement between the creditors and the company. See *Morrill* v. *Noyes* (1863), 56 Me. 458, 96 Am. Dec. 486; *Wildberger* v. *Hartford Fire Ins. Co.* (1894), 72 Miss. 338, 17 South. 282, 28 L. R. A. 220, 48 Am. St. 558; *Pelletier* v. *Greenville Lumber Co.* (1898), 123 N. C. 596, 31 S. E. 855, 68 Am. St. 837; *Lorch* v. *Aultman & Co.* (1881), 75 Ind. 162; *Cortleyeu* v. *Hathaway* (1855), 11 N. J. Eq. 39, 64 Am. Dec. 478, note. It does not appear when the receiver was appointed, with reference to the date of the alleged agreement, but there are no facts alleged which show that the appointment may not have been made on that date. The statement in the answer that the company had a large amount of unencumbered property at the time the alleged agreement was made does not aid the pleading, as it is not claimed the surety was released by appellants' failure to bring suit after notice to them as provided in §§1224, 1225 Burns 1901, §§1210, 1211 R. S. 1881.

The appellee Northwestern Scraper Company in its second paragraph of answer admits the execution of the note, but alleges that on December 12, 1900, it was in failing circumstances, which appellants knew; that it was also indebted to appellants $2,000 by a note and $6,941 on an account for overchecks; that appellants, by and through Daniel F. Mustard, and this appellee Northwestern Scraper Company, through its officers, agreed that if said appellee would execute its promissory note, bearing interest, for the account, appellants would bring an action on the $2,000 note, the costs and attorney's fees being less on that note, and further agreed to apply for a receiver for appellee company, for the purpose of trying to save its property from sacrifice, and for the benefit of its general creditors;

"that said Mustard also further then and there agreed that no suit should then be brought on these notes, nor the one in suit in this action, a further consideration for said agreement;" that in consideration of this agreement appellee scraper company executed its notes dated December 3, 1900, the date of the last of the overchecks, bearing eight per cent interest; that within three days after the agreement appellants commenced this action; that by reason of the agreement appellants should not recover their costs and attorney's fees.

The third paragraph of the scraper company's answer admits the execution of the note; contains substantially the same allegations as the second paragraph relating to the condition of the company's affairs, its indebtedness, the agreement to execute the notes and apply for a receiver; that appellants would cause an action to be brought on the smallest of the notes, "and would not commence any action on any of the other said notes so held by them;" that the notes were executed according to the agreement; that within about three days after the agreement appellants commenced an action, but not on the note agreed on, and petitioned for a receiver, and at the same time, in violation of the agreement, brought this action; that a receiver was appointed and is now acting; and that by reason of the agreement, appellants should not recover costs and attorneys' fees.

It has often been decided, and is now a well-established rule, that an agreement to forbear suit on an obligation for a limited time after due, though founded upon a sufficient consideration, can not be pleaded in bar of an action brought within that time; that the only remedy for the violation of such an agreement is an action for damages. Note to *Reed* v. *Shaw* (1823), 1 Blackf. 245; *Berry* v. *Bates* (1828), 2 Blackf. 118; *Mendenhall* v. *Lenwell* (1839), 5 Blackf. 125, 33 Am. Dec. 458; *Lowe* v. *Blair* (1842), 6 Blackf. 282; *Newkirk* v. *Neild* (1862),

19 Ind. 194, 81 Am. Dec. 383; *Irons* v. *Woodfill* (1869), 32 Ind. 40; *Thalman* v. *Barbour* (1854), 5 Ind. 178; *Murphy* v. *Robbins* (1861), 17 Ind. 422; *Nelson* v. *White* (1878), 61 Ind. 139; *Clark* v. *Snelling* (1849), 1 Ind. 382; *Mills* v. *Todd* (1882), 83 Ind. 25; *Williams* v. *Scott* (1882), 83 Ind. 405; *Vogle* v. *Harris* (1887), 112 Ind. 494; *Ayers* v. *Hamilton* (1892), 131 Ind. 98; *Foster* v. *Dailey* (1892), 3 Ind. App. 530.

In *Newkirk* v. *Neild, supra,* it is held that such breach can not be made available by way of counterclaim, for the reason that there was no breach of contract or right of action in the defendant at the time of the commencement of the suit.

In *Williams* v. *Scott, supra,* the court said: "The contract for forbearance was collateral to the note, and did not deprive it of its maturity or prevent the bringing of an action upon it as a mature claim before the expiration of the period of extension. In an action at law, the fact that suit has been thus brought in violation of the agreement to forbear can not defeat a recovery against the principal debtor, no matter in what form of pleading he may set up the breach of the collateral contract. His only remedy is an action for damages for the breach of the agreement to forbear."

When it is said that the creditor may, notwithstanding the agreement to forbear, bring the action before the expiration of the period of extension, it must also be said that he has the right to prosecute his action to final judgment, and is entitled to recover whatever the law says he is entitled to under the contract on which he sues. As stated in *Newkirk* v. *Neild, supra*: "The simple commencement of a suit would, to be sure, be a technical breach of the agreement not to sue; but until such suit was prosecuted to final judgment, the damages could be but nominal."

Moreover, neither of these answers shows necessarily that there was an agreement to forbear suit for any length of time. It is stated in the second paragraph that it was agreed at the time that "no suit should then be brought." It was agreed that an application for a receiver should be made by appellants, but in this paragraph it is not shown when the application was to be made, or that it ever was made. It can not be claimed that it was agreed no suit should ever be brought on the note. In the third paragraph appellants were to bring suit on one of the notes, "and would not commence any action on any of the other" notes. It is unnecessary to repeat here what we have already said as to the effect of the appointment of a receiver. After a receiver was appointed the note then due could be collected without reference to any agreement the parties had made prior to the appointment.

The demurrers to the second and amended third paragraphs of appellee Neely's answer, and to the second and third paragraphs of answer of appellee Northwestern Scraper Company, should have been sustained, and as to these appellees the judgment is reversed. As to the other appellees, the judgment is affirmed.